**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Marilyn Rombin-Denegre,

       Plaintiff,

v.	Case No. 1:10cv00365

Covidien,	Judge Michael R. Barrett

       Defendant.

**OPINION & ORDER**

This matter is before the Court upon Defendant's Motion for Summary Judgment (Doc. 21.) Plaintiff has not responded to Defendant's Motion.

**I.	BACKGROUND**

In April of 2007, Plaintiff Marilyn Rumbin-Denegre began working as a business development executive ("BDE") for Defendant Covidien (Doc. 22-1, Marilyn Rumbin-Denegre Depo. at 34.) Plaintiff was responsible for procuring consulting contracts with healthcare organizations, such as hospitals. (Id. at 43-44.) The business development department was a new department. (Id. at 38.)

Plaintiff claims that her relationship with Kevin Dixon, Defendant's Area Vice President, "soured right from the beginning." (Id. at 75.) In May of 2007, Dixon invited Plaintiff and Sue Michalic, another BDE, to a sales meeting in Indianapolis. (Id.) In the middle of their presentation, Dixon began questioning the purpose of the business development department, and why promotional materials were not yet available. (Id. at 76.) Dixon then stood up and told the two women to "get the blank out of the room and he was going to make sure [they] were fired." (Id.) When Plaintiff tried to talk to Dixon

1

after the meeting, Dixon told her that he thought the new department was "a waste of time and money." (Id. at 79.)

In December of 2007, Jack McCarthy, Plaintiff's direct supervisor, began criticizing Plaintiff's job performance. (Doc. 21, Brian Aff. ¶ 5.) Specifically, Plaintiff was unresponsive to Dixon's inquiries, she was late for meetings with clients, and several sales representatives were reluctant to work with Plaintiff when calling on clients. (Id., Exs. A, B.) In January of 2008, McCarthy discussed Plaintiff's performance issues with Dixon, and suggested placing Plaintiff on a Performance Improvement Plan ("PIP"). (Id., ¶ 6-7.)

In February of 2008, McCarthy and Denise Brian, a Human Resources Manager for Defendant, met with Plaintiff to discuss her performance issues. (Id., ¶ 8.) McCarthy and Brian told Plaintiff that the sales representatives had lost confidence in her, and noted that she had yet to procure any new contracts, even though she had been with the company for a year. (Id.) Around the same time, one of Defendant's clients expressed frustration with Plaintiff's delaying, cancelling, or failing to attend meetings, and asked that Defendant assign someone else to that account. (Id., Ex. C.)

In March of 2008, Plaintiff was diagnosed with thyrotoxicosis and suffered a "thyroid storm." (Rumbin-Denegre Depo. at 10-11.) Plaintiff requested immediate leave with an estimated return-to-work date of March 24, 2008. (Brian Aff. ¶ 10.) However, Plaintiff did not return to work until August 28, 2008. (Id., ¶ 11.) Plaintiff was released to work with the following restrictions from her doctor: "[p]ace herself, as directed, maintain her nutrition and dietary requirements, exercise, rest, medication and medical appointments for the continuation of her treatment and care." (Id., ¶ 12.)

Around September of 2008, Defendant changed its reporting structure for Plaintiff's position. (Id., ¶ 14.) Plaintiff's new direct supervisor was Emily Elswick, who reported directly to Dixon. (Id.) McCarty discussed Plaintiff's performance reports with Elswick and Dixon so they were aware of the problems. (Id.)

Upon returning to work, Elswick offered Plaintiff assistance in improving her performance. (Id., ¶ 15.) However, Plaintiff's performance problems continued, and on October 20, 2008, Plaintiff was placed on a PIP. (Id., ¶ 16.) Under the PIP, Plaintiff was required to provide Elswick with a weekly schedule of activity, complete call-in sheets, schedule a weekly call with Elswick, re-engage all customers with whom Plaintiff had contract proposals, be on time for all scheduled meetings and calls, obtain approval for at least one proposed contract to move forward, and complete a business plan. (Id., ¶ 17)

On November 18, 2008, Elswick gave Dixon a report on Plaintiff's progress under the PIP. (Id., ¶ 17.) The report noted that Plaintiff had failed to obtain any contracts, missed several strategic conference calls since the PIP issuance date, failed to submit weekly itineraries, call-in sheets, and other documents to Elswick, and failed to visit her accounts. (Id.)

On November 24, 2008, in response to the PIP, Plaintiff sent a list of "Expectations and Requests" to Defendant.[1] (Id., ¶ 19.) The next day, Dixon and

---

[1] The "Expectations and Requests" included items such as "Authorization and signature for computer and blackberry activation and workable equipment upon my arrival"; "Support in expediting availability of working equipment"; "Facilitation and communication with internal and external parties with availability of tools necessary for me to perform my job"; "Management and/or representatives to return phone messages prior to my return to work and within the first 30 days of return to discuss strategy, goals, status and support for re-arrangement"; "Dialogue and assistance if needed regarding my medical, physical, and employment needs to insure that I had the support and resources necessary to be successful";

Elswick met with Plaintiff, addressed the items on the list and pointed out that Plaintiff had access to most of the requested items.

On December 5, 2008, McCarthy provided Plaintiff with her annual performance review. (Rumbin-Denegre Depo. at 21.) McCarthy once again pointed out the improvements that will be required of Plaintiff. (Id.) McCarthy rated Plaintiff as having met Defendant's expectations but rated Plaintiff's behavior as below Defendant's expectations. (Id.)

On December 26, 2008, Plaintiff resigned from her employment with Defendant. Plaintiff's resignation was to be effective on January 16, 2009. (Id. at 139; Brian Aff. ¶ 21.)

Meanwhile, Plaintiff had accepted an employment offer with another company, Neuronetics, on December 5, 2008. (Rumbin-Denegre Depo. at 29-30.) Plaintiff started her employment with Neuronetics on January 5, 2009, while still employed by Defendant. (Id.)

In her Complaint, Plaintiff claims that Defendant violated the Americans with Disability Act ("ADA"). Defendant moves for summary judgment on all claims.

---

"Facilitation by management to assist and outline new strategies"; "Education and training on Initiatives, new role outs (sic), resources, and tools and have been developed in my absence"; "Updated phone lists for sales and facilitation as well as direction to identify qualified, targeted accounts/leads that would insure success"; "Business plan and objectives submitted upon my return and re-established on a weekly basis"; "Realistic expectations and understanding of surgeons' scheduled availability, cancellations, willingness to contract short notice, revenue availability, and their willingness to gain funding and support from additional resources e.g., Hospital or department budgeting"; "Management's positive support and communication with sales to set a professional and cooperative tone"; "Reasonable business standards designed and implemented for me that are the same for everyone and not artificial standards applied only to me"; and "Continuity with account[s] developed by me prior to my disability leave and support in maintaining those clients." (Doc. 21, Brian Aff., Ex. J.)

## II. ANALYSIS

### A. Summary Judgment Standard

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admission to file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

Where no response to a summary judgment motion is properly before a court, the court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Spurlock v. Whitley*, 79 Fed. Appx. 837, 839 (6th. Cir. 2003) (quoting Street v. J.C. Bradford & Co., 866 F.2d 1472, 1479-80 (6th Cir. 1989)). "Rather, the district court may rely upon the facts advanced by the movant." *Id.* Federal Rule of Civil Procedure 56(e) requires that the nonmoving party to file a response pinpointing specific facts to demonstrate the existence of genuine issues of material fact. Fed.R.Civ.P. 56(e). Consequently, the nonmoving party is determined to have waived its opportunity to designate facts in accordance with Rule 56(e) when it fails to properly file a response with the Court. *Guarino v. Brookfield Tp. Trustees*, 980 F.2d

399, 405 (6th Cir. 1992). It is not the role of the court to develop facts for the nonmoving party. *Id.* at 406.

## B. <u>Americans with Disabilities Act</u>

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. §12112(a).

To establish a prima facie case of discrimination under the ADA, a plaintiff must show "(1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation; and (3) who was discriminated against solely because of the disability." *Sprees v. James Marine, Inc.* 617 F.3d 380, 395 (2010) (quoting Talley v. Family Dollar Stores, 542 F.3d 1099, 1105 (6th Cir. 2002)). For purposes of its motion, Defendant does not challenge the notion that Plaintiff was disabled as a result of her thyroid condition,[2] or that she was

---

[2] In her deposition, Plaintiff testified:

Q. And what is your disability?

A. My disability?

Q. Yes.

A. At the time it was due to a thyroid condition, a metabolic condition.

Q. And do you still have that same condition?

A. Yes, I do.

Q. And what is thyroid storm?

A. Thyroid storm is also referred to as thyrotoxicosis.

6

qualified for her position as BDE. However, Defendant does dispute Plaintiff's claim that it discriminated against her. It appears from the Complaint that Plaintiff relies upon four different theories of discrimination: (1) Defendant refused to accommodate her disability; (2) Defendant harassed her based on her disability; (3) Defendant constructively discharged her from employment; and (4) Defendant discriminated against her by withholding technical and managerial support, and denying her other employment benefits.

**(1) Reasonable accommodation**

The ADA defines discrimination to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. §12111(b)(5)(A). The Act defines a "reasonable accommodation" to include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials, or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B); *Monette v. Eelctronic Data Systems Corp.* 90 F.3d 1173, 1178 n.5 (6th Cir. 1996).

Under the ADA, a plaintiff "bears the initial burden of proposing an accommodation and showing that accommodation is objectively reasonable." *Talley*, 542 F.3d at 1108, *quoting Klieber v. Honda of Am. Mfg.*, 485 F.3d 862, 870 (6th Cir.

---

>     Q. What does that mean?
>
>     A. Thyrotoxicosis is when the thyroid levels are abnormal causing a shutdown or breakdown in the body with the central nervous system, respiratory system and cardiovascular system.

(Rumbin-Denegre Depo at 10-11.)

2007). However, an employee cannot force his or her employer to provide a specific accommodation if the employer offers another reasonable accommodation. *Id.* If an employee rejects a reasonable accommodation, the individual is no longer considered as a "qualified individual with a disability." *Id.*; *see also* 29 C.F.R. § 1630.9(d) (explaining that if an individual rejects a "reasonable accommodation . . . that is necessary to enable the individual to perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered a qualified individual with a disability.").

There is no evidence in the record that Defendant failed to accommodate the medical restrictions Plaintiff provided to Defendant. Plaintiff's medical restrictions were largely personal activities which would take place outside the workplace: maintaining nutrition and dietary requirements, exercising, resting, taking her medication, and continuing treatment and care. Absent any evidence to the contrary, Plaintiff cannot maintain a failure to accommodate claim based on these restrictions.

In addition, the Court finds that Plaintiff's "Expectations and Requests" which she submitted in response to her PIP, did not trigger the "interactive process" outlined in the ADA's regulations. *See* 29 C.F.R. § 1630.2(o)(3); *see also Kleiber*, 485 F.3d at 871 ("Even though the interactive process is not described in the statute's text, the interactive process is mandatory, and both parties have a duty to participate in good faith.").

Based on the discussion above, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim that Defendant failed to reasonably accommodate her disability.

**(2) Harassment**

In order to establish a claim of discriminatory harassment which results in a hostile work environment under the ADA, a plaintiff must establish that: "(1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures." *Trepka v. Board of Educ.*, 28 Fed. Appx. 455 (6th Cir. 2002) (Blankenship v. Parke Care Centers, Inc., 123 F.3d 868, 872 (6th Cir. 1997) and Crawford v. Medina General Hosp., 96 F.3d 830, 834 (6th Cir. 1996)).

To support her claim, Plaintiff cannot rely on the sales meeting which occurred in May of 2007. This incident was ten month before Plaintiff suffered the thyroid storm. Therefore, Dixon's statement to Plaintiff and Michalic, that "he was going to make sure [they] were fired" could not be based on Plaintiff's disability. Moreover, there is no evidence that Dixon made such statements on a regular basis. A hostile work environment occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Similarly, Plaintiff cannot rely on the criticism of her work performance. There is nothing in the record which indicates that the criticism was based on her disability. Plaintiff's problems with her performance began before she suffered the thyroid storm.

In addition, there is no evidence that the criticism was "sufficiently severe or pervasive" to constitute a hostile work environment.

Therefore, Defendant is entitled to summary judgment on Plaintiff's claim of harassment based on her disability.

### (3) Constructive discharge

The record shows that Plaintiff voluntarily resigned from her employment with Defendant. Accordingly, Plaintiff claims that she suffered an adverse employment action in the form of a constructive discharge. "The existence of a constructive discharge 'depends upon the facts of each case and requires an inquiry into the intent of the employer and the reasonably foreseeable impact of the employer's conduct upon the employee.'" *Smith v. Henderson*, 376 F.3d 529, 533 (6th Cir. 2004) (quoting Held v. Gulf Oil Co., 684 F.2d 427, 432 (6th Cir. 1982)). The claim requires a finding that "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.*

There is no evidence in the record that Plaintiff was subject to such working conditions. Also absent from the record is any evidence that Plaintiff made repeated requests for accommodation. *See Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1109 (6th Cir. 2008) (explaining that "a complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge.") (quoting Johnson v. Shalala, 991 F.2d 126, 132 (4th Cir. 1993)).

Therefore, Defendant is entitled to summary judgment on Plaintiff's claim that she was constructively discharged based on her disability.

**(4) Discrimination**

In her Complaint, Plaintiff claims that Defendant discriminated against her by withholding technical and managerial support, and denying her other employment benefits. The court finds that based on the record before it, these acts do not rise to the level of the adverse employment action. *See Talley*, 542 F.3d at 1107 ("An adverse employment action is a 'materially adverse change in the terms or conditions of . . . employment because of [the] employer's conduct.'") (quoting Mitchell v. Vanderbilt Univ., 389 F.3d 177, 182 (6th Cir. 2004). Therefore, Defendant is entitled to summary judgment on Plaintiff's discrimination claim on this basis.

## III. CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment (Doc. 21). This matter shall be **CLOSED** and **TERMINATED** from the docket of this Court.

**IT IS SO ORDERED.**

                                            */s/ Michael R. Barrett*
                                          Michael R. Barrett, Judge
                                          United States District Court